(Police Court of Cincinnati.)

## STATE OF OHIO v. ELIJAH WITHERS.

*Criers of tobacco at warehouse sales "auctioneers" within the meaning of the Russell law.*

(Decided January, 1896.)

GREGG, J.

It seems to be the desire of the defendant's counsel to waive all questions on the pleadings in this case, for the purpose of procuring a decision on the question proper.

Assuming, therefore, without deciding, that the pleadings properly state a case against the defendant, I proceed to a conclusion on the issue.

It is the law of this state, that "auctioneers shall pay a license" graduated by the amount of their sales.

The defendant, Withers, is charged with a violation of this law, in that he is an auctioneer, without a license, the amount of whose sales are unknown to the prosecuting attorney.

Irrespective of what he may have been called, or how he may have been referred to, during the trial of this case, we may consider the defendant to be an auctioneer. He says he is, and has been for the past twenty-three years; that is his profession, the testimony shows it; he draws a salary for his services as such, and he is so regarded, and is so called by his employers and by the trade.

Whether or not he is an auctioneer liable for the payment of a license under the Russell Law, is a question to be determined from the law, for we have little or no difficulty with the facts in the case.

It is conceded that the defendant has no license as an auctioneer, and that the city of Cincinnati is a city of the first class of the first gade.

It is undisputed that the defendant is employed by the Leaf Tobacco Warehouse Company, and is paid a yearly salary by it, for his services as a crier at their sales of tobacco.

The tobacco is received by the Warehouse Company from raisers and shippers, as raw material. The sales commence at 9 o'clock each morning of the week days, and are conducted by the auctioneer, in the manner of auction sales generally. First—Announcing the sale, then callling attention to the particular tobacco about to be offered, and asking for bids; receiving a bid, the auctioneer, in a loud tone of voice, proceeds to cry it off, and in the manner peculiar to auctioneers, seeks to excite competitive bidding, and run the price as high as possible. Having received the highest bid that can be procured, he knocks it down to the highest bidder, by announcing it sold, to whoever it may be.

By a rule of the Warehouse Company, all sales are made subject to the condition that the owner may have two hours in which to accept or reject the bid made; further time may be given, if agreeable to the purchaser; but no purchaser shall be held over two hours against his will. If the owner fail to accept within the prescribed time, all bids are rejected. If the owner reject the bid, as to part only, of the tobacco sold, the buyer has the right to reject a corresponding amount of the remainder, if any.

The auctioneer has nothing to do with the sale after knocking down the tobacco to the highest bidder; he does not know what sales are accepted or what rejected. I think this all that is necessary for the determination of this case, though the testimony goes on to show that the rule referred to is often varied; that sometimes the buyer, finding his bid reject-

ed, raises his offer twenty-five or fifty cents a hundred, and the tobacco is sold that way by the owner without the intervention of the auctioneer, and sometimes a sale is made by the warehousemen at private sale.

It is contended by the defense:

First, that the law does not contemplate the licensing of persons selling raw tobacco at public auction; and

Second, that it has not been established, that it is sold at auction, or that the defendant is an auctioneer.

As to the first proposition, without extended comment, I am of opinion that the Russell Law is in no way qualified or restricted in its operation by the provisions of any of the sections cited by counsel for the defendant. In localities where the Russell Law is not in operation, section 4222 may prevail, but it can not alter or explain the provisions of the Russell Law, or hinder its operation in cities of the first grade of the first class.

It may as well be urged as the contrary that had the legislature intended to exempt the sellers of produce, etc., from the operation of the law, they would have done so by express provision, as they did in section 2672-19, of the same act.

But if there is a conflict between these sections and the law in question, then the acts conflicting are repealed by express provision of section 2672-44.

Is there a public auction sale of this tobacco? If there is, is the defendant an auctioneer, from whom a license may be exacted?

If a buyer proposed to an owner to give a certain sum of money for certain tobacco, the offer to be accepted within two hours, we would readily recognize the transaction as one known to the law of contracts as a "sale on time."

If the owner, within the prescribed time, expressed his assent, he completes the contract as effectually as if he had answered in the same way at the first moment after the offer was made. If the owner failed to accept the proffer within the time prescribed, it would be equivalent to a rejection, and no sale. If the proposition was altered or varied in any of its material parts, it would be a new contract. All these propositions are well known to the law of contracts.

It is a settled rule, applicable to the law of agency, that what one may lawfully do himself, he may delegate another to do for him; so that in a transaction of this kind it can make no difference whether the owner sells his tobacco himself, or delegates another to do the bargaining for him. If he accept the bid received by Withers, within two hours, it is a sale. If he does not accept it, irrespective of the rules of the Warehouse Company, as a matter of law, it is regarded as a rejection, and there is no sale. If the conditions imposed at the sale by Withers are varied or altered by the owner or buyer, there is a new contract, and no sale by Withers. And so it may be said of those bids that are rejected—there is no sale. It is those that are accepted that must fix the liability of the auctioneer, if he is liable at all.

It is the act of the defendant that binds the parties when they are bound, and it can not signify whether he was acting for the parties, directly as their agent, or as an agent of their agent, from whom he receives his compensation. In other words, it can make him none the less an auctioneer that, from the peculiar character of his employment, he neither receives his compensation, nor acts directly for the owner and purchaser. The rule that an auctioneer is to be considered the agent of both parties to a sale, rests upon a mere presumption of fact, which may be rebutted by the particular circumstances of the case. Nor can the fact that an

U. S. law forbids any person dealing in tobacco without a license, change the character of the sale. It is the privilege of any person willing to pay for a license to procure it, and attend and bid at these sales.

Having come to this conclusion, I find the defendant guilty, and he may pay a fine of $50 and the cost of prosecution.

Wm. H. Whittaker and C. L. Nippert, for the state.

Hiram D. Peck and John Galvin, for the defendant.

---

(Hamilton County Court of Common Pleas.)